United States District Court
Southern District of Texas
**ENTERED**
February 06, 2026
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| ELBERTH IMANEL SUAREZ-LUGO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-CV-00029 |
| | § | |
| PAM BONDI, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Elberth Iman Suarez-Lugo's Petition for Writ of Habeas Corpus, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons explained below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 12), is DENIED.

## BACKGROUND

### A.    Factual Background

Petitioner Elberth Imanel Suarez-Lugo ("Petitioner" or "Mr. Suarez-Lugo") is a 21-year-old Venezuelan citizen. (Dkt. 1 at 4.) Respondents assert that Mr. Suarez-Lugo entered the United States without inspection in 2023. (Dkt. 12 at 2.)[1] On August 13, 2023, Petitioner was served with a form I-860 or "Notice and Order of Expedited Removal." (Dkt. 12, Attach. 1.)[2] The top half of

---

[1] Petitioner has indicated that he disputes this entry date and it remains contested in his removal proceedings. (Dkt. 1 at 5.)

[2] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

the form indicates that the Department of Homeland Security determined Mr. Suarez Lugo to be inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) as someone who did not have valid entry or travel documentation. *See* 8 U.S.C. 1182(a)(7)(i)(I). However, the bottom half of the form has a section entitled "ORDER OF REMOVAL" that remains blank. (Dkt. 12, Attach. 1.)

About a month later, on September 7, 2023, Mr. Suarez-Lugo was served with a Notice to Appear (NTA). (Dkt. 1, Attach. 2 at 6.) The NTA did not charge petitioner as an "arriving alien" but instead charged him as an "alien present in the United States who has not been admitted or paroled." (*Id*.) He was charged with removability under § 212(a)(6)(A)(i) and § 212(a)(7)(A)(i)(I) of the INA. (*Id*.; Dkt. 12 at 2.) The NTA also indicates that an asylum officer found that Petitioner demonstrated a credible fear of persecution or torture and that Petitioner was placed in removal proceedings under Section 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a. (Dkt. 1, Attach. 2 at 6.) Additionally, a "Notice to EOIR: Alien Address" form dated September 8, 2023, indicates that Petitioner was thereafter released from ICE Custody on "INTERIM PAROLE." (Dkt. 1, Attach 2 at 5.)

After being released on parole, Petitioner lived in United States for several years until he was recently re-detained on August 13, 2025, during a routine Immigration and Customs Enforcement (ICE) check-in. (Dkt. 1 at 2, 5; Dkt. 16 at 2.) On December 31, 2025, an Immigration Judge (IJ) denied Petitioner's request for bond, finding that the immigration court lacked jurisdiction based on *Matter of Yajure-Hurtado*, 24 I. & N. Dec. 689 (BIA 2008). (Dkt. 1, Attach. 2 at 13.) On February 2, 2026, Petitioner was ordered removed. Executive Office of Immigration Review (EOIR), Automated Case Information, https://perma.cc/LN7F-XQ7A, (last visited Feb. 5, 2026.) Petitioner has until March 4, 2026, to appeal his order of removal. *Id*.; *see also* 8 U.S. Code

§ 1231 (describing that the removal period begins when an order of removal becomes administratively final); 8 CFR § 1241.1 (describing that a removal order is administratively final "upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"). Petitioner remains detained at the Rio Grande Processing Center in Laredo, Texas. (Dkt. 1, Attach. 2 at 2.); *see* Online Detainee Locator System, https://locator.ice.gov/odls/#/results (last visited Feb. 5, 2026).

### B.    Procedural Background

Petitioner filed his Habeas Petition on January 9, 2026, seeking immediate release from custody and arguing that his current detention is unlawful and in violation of his Fifth Amendment due process rights, statutory rights under the Immigration and Nationality Act (INA), and the Administrative Procedure Act (APA). (Dkt. 1 at 2, 10–13.) Petitioner argues that "[t]he core question before this Court is whether the Department of Homeland Security has statutory authority to detain Petitioner without a bond hearing. If 8 U.S.C. § 1225(b)(2) does not apply to Petitioner— who was arrested in the interior of the United States and was not seeking admission—then his detention necessarily falls under 8 U.S.C. § 1226(a), which authorizes discretionary release." (*Id* at 2.)

The Court ordered Respondents to show cause and submit a response by January 20, 2026, and Petitioner to reply by January 23, 2026. (Dkt. 3.) Respondents submitted a timely Response and Motion for Summary Judgment on January 20, 2026. (Dkt. 12.) Respondents argue that Petitioner failed to exhaust administrative remedies, that Petitioner was initially placed in expedited removal proceedings pursuant to 8 § U.S.C. 1225(b)(1), and that "Petitioner's habeas Petition should be denied because he falls under the plain language of the mandatory detention provisions in 8 U.S.C. § 1225." (*Id*. at 1– 2, 4–6.) Respondents argue that a plain language reading

of the relevant INA provisions, developments in agency interpretation, and persuasive decisions support a reading of § 1225(b)(2) rather than § 1226(a) as the appliable statutory authority for Petitioner's detention. (*Id*. at 2–6.) Petitioner submitted a timely reply to Respondent's Response, arguing that Respondents misclassify Petitioner's detention as being governed by 8 U.S.C. § 1225(b). (Dkt. 16.) Petitioner's reply reiterates that the appropriate authority governing Petitioner's detention is 8 U.S.C. § 1226(a), since he was apprehended in the interior after being paroled and living in the United States for several years. (Dkt. 16 at 2.)

## LEGAL STANDARD

### A.    28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The writ of habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). Accordingly, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Zadvydas*, 533 U.S. at 687 (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

### B.    Rule 56(a) Summary Judgment

Generally, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). "Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving party." *Id.* (quoting *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 603 (2015)).

## DISCUSSION

The Court now considers Petitioner's claim that he is being unlawfully detained under 8 § 1225. The Court first discusses the relevant statutory framework to address Petitioner's claim. After addressing the relevant statutes at play, the Court analyzes whether it has jurisdiction to hear Petitioner's claim. Finding that it does, the Court considers Respondents' argument that Petitioner's claim fails because he has not exhausted his administrative remedies. The Court then

addresses the central question at hand, whether Petitioner is being lawfully held under 8 U.S.C. § 1225. Finally, the Court also considers the appropriate remedy in this case.

### A.    Statutory Framework

#### 1.    Section 240 Proceedings vs. Expedited Removal Proceedings

As relevant here, in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress established the two main processes for removing noncitizens deemed potentially ineligible to enter or remain in the United States: "section 240 proceedings" and "expedited removal." *See* Pub. L. 104-208, 110 Stat. 3009, 3009-546 (1996); *see also Make the Rd. New York v. Noem*, 2025 WL 2494908, at *2 (D.D.C. Aug. 29, 2025) (discussing these two processes in detail).

 The standard or "usual removal" proceedings are commonly referred to as "section 240" proceedings in reference to the section of the Act in which the proceedings are described. *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *8 (E.D.N.Y. Nov. 28, 2025) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)); *Make the Rd. New York*, 2025 WL 2494908, at *2. Section 240 proceedings are codified in 8 U.S.C. § 1229a. The proceedings take place before an immigration judge (IJ), and the noncitizen has a right to hire an attorney, present evidence, and cross-examine witnesses. *See* 8 U.S.C. § 1229a(a)(1), (b)(1), (b)(4); 8 C.F.R. § 1003.10(a). The proceedings are generally recorded, may take place over the course of multiple hearings and months, and once a decision has been made by the IJ, either party may appeal to the Board of Immigration Appeals ("BIA"). *Rodriguez-Acurio*, 2025 WL 3314420, at *8; *see also* 8 C.F.R. §§ 1003.1, 1240.15. The BIA's decision may then be appealed to a United States court of appeals. 8 U.S.C. § 1252.

The IIRIRA also provides a separate form of proceeding, commonly referred to as "expedited removal," as set forth in 8 U.S.C. § 1225(b)(1). *Rodriguez-Acurio*, 2025 WL 2494908, at *9.[3] Expedited removal applies to certain noncitizens as specified in the statutory language. *See* 8 U.S.C. § 1225(b)(1)(A). First, as a threshold question, the noncitizen must be determined to be inadmissible under 8 U.S.C. § 1182(a)(6)(C) (those who make a false claim to U.S. citizenship or who seek an immigration benefit by fraud or misrepresentation) or § 1182(a)(7) (those who lack proper entry documentation). *See* 8 U.S.C. § 1225(b)(1)(A)(i). Second, among those noncitizens "only two still narrower categories of noncitizens" are subject to expedited removal. *Make the Rd. New York*, 2025 WL 2494908, at *4. First, those who fall into the "Arriving Alien Provision" as noncitizens "arriving in the United States," and second, those fall into the "Designation provision" as noncitizens designated by the Department of Homeland Security "who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'" *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020) (describing who may be subject to is expedited removal).

Unlike section 240 proceedings, expedited removal generally occurs over a few days or even hours. *See Rodriguez-Acurio*, 2025 WL 3314420, at *9 (citation omitted). Once put in expedited removal, the noncitizen is subject to a process by which immigration officers from U.S. Customs and Border Protection (CBP), not IJs, may order individuals to be removed from the

---

[3] The regulations governing expedited removal and associated procedures include 8 C.F.R. §§ 235.3 and 235.15 (expedited removal), 8 C.F.R. §§ 208.30, 1208.30, 208.33, 1208.33, 208.35, 1208.35 (credible fear determinations), and 8 C.F.R. §§ 235.6, 1003.42 (review of credible fear determinations).

United States. 8 U.S.C. § 1225(b)(1); *see Thuraissigiam*, 591 U.S. at 109. In expedited removal, an immigration officer conducts initial fact finding and determines whether to order the noncitizen removed. 8 C.F.R. § 235.3(b)(2)(i). Then a supervising officer reviews and signs off on the inspecting officer's determination. *Id*. Unless the individual articulates a fear of returning to their home country or an intention to seek asylum, expedited removal is generally carried out without access to counsel, an IJ, in-court proceedings, or the ability to appeal the immigration officers' decision. *See id.* § 235.3(b)(2)(ii), (b)(4); 8 U.S.C. § 1252(a)(2)(A)(i); *Make the Rd. New York*, 2025 WL 2494908, at *3.

If a noncitizen subject to expedited removal indicates an intention to apply for asylum or a fear of persecution, an immigration officer must refer the noncitizen for a credible fear interview (CFI) with an asylum officer. *See* 8 U.S.C. § 1225(b)(1)(A)(ii), (1)(B); 8 C.F.R. § 235.3(b)(4) ("inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer"). An asylum officer then determines whether the noncitizen has a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(B)(v). If the asylum officer makes a negative fear determination, and a supervising officer agrees with the negative determination, the noncitizen may request IJ review of the negative CFI. *See* 8 C.F.R. §§ 208.30(g)(1), 208.33(b)(2)(iii), (v), 208.35(b)(2)(iii), (v), 1208.30(g)(2). The IJ review must be conducted, "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the [negative credible fear] determination." 8 U.S.C. § 1225(b)(1)(B)(iii)(III). However, "[i]f the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110 (citing 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii)). Thus, when an asylum officer makes a positive credible fear finding, United States Citizenship and

Immigration Services (USCIS) may issue the noncitizen a Notice to Appear "for full consideration of the asylum and withholding of removal claim in proceedings under section 240 of the Act[.]" 8 C.F.R. § 208.30(f).

### 2.    Statutory Detention Authorities

"U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

### i.    Detention Under Section 1225

8 U.S.C. §§ 1225(b)(1) and (b)(2) serve as the detention authority for certain "applicants for admission" into the United States. *See Jennings*, 583 U.S. at 287–89.[4]

8 U.S.C. § 1225(b)(1) authorizes mandatory detention for applications for admission who are subject to expedited removal. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (noncitizens "subject to the procedures under this clause *shall* be detained pending a final determination of credible fear of prosecution and, if found not to have such a fear, until removed." (emphasis added)); *see also id.* § 1225(b)(1)(B)(ii) (directing that if the immigration officer determines that a noncitizen subject to expedited removal "has a credible fear of persecution ... the alien *shall* be detained for further consideration of the application for asylum" (emphasis added)).

8 U.S.C. § 1225(b)(2)(A) authorizes mandatory detention throughout section 240 proceedings for noncitizens who are 1) "seeking admission" and 2) determined by an immigration

---

[4] Section 1225(a)(1) defines "application for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival[.]" And "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

officer not to be "clearly and beyond a doubt entitled to be admitted" to the United States. *See* 8 U.S.C. § 1225(b)(2)(A).[5] In other words, 8 U.S.C. § 1225(b)(2) governs detention for noncitizens who are seeking admission and are inadmissible for reasons other than misrepresentation or improper documentation. *See* 8 U.S.C. § 1182(a)(2)–(3); *see also Rodriguez-Acurio*, 2025 WL 3314420, at *11.

Sections 1225(b)(1) and (b)(2) "provide for detention for a specified period of time." *Jennings*, 583 U.S. at 299. "Section 1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Id*. With the exception of temporary parole under 8 U.S.C. § 1182(d)(5)(A), "there are no other circumstances under which aliens detained under [Section] 1225(b) may be released." *Id* at 300. Accordingly, "[b]oth provisions mandate detention until a certain point and authorize release prior to that point only under limited circumstances." *Id.* at 301.

### ii.    Parole Pursuant to Section 1182(d)(5)(A)

As noted, an applicant for admission detained under 8 U.S.C. § 1225(b)(1) or (b)(2) may be temporarily paroled pursuant to § 1182(d)(5)(A), commonly referred to as "humanitarian parole." *See Jennings*, 583 U.S. at 288. Parole under 8 U.S.C. § 1182(d)(5)(A) is available to any "applicant for admission" not otherwise subject to mandatory detention. *See* 8 U.S.C. § 1182(d)(5)(A). An applicant for admission is defined as "an alien present in the United States who

---

[5] Section 1225(b)(2)(B) states that the mandatory detention provision in 1225(b)(2)(A) does not apply to noncitizens who are crewman, stowaways, or subject to 1225(b)(1).

has not been admitted or who arrives in the United States []whether or not at a designated port of arrival [...]." 8 U.S.C. § 1225(a)(1). Thus, noncitizens who have not been admitted, including both "arriving aliens" who come through a port of entry and those who "entered without inspection," can be released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).[6]

Section "1182(d)(5) parole power gives the executive branch a limited authority to permit incoming aliens to stay in the United States without formal authorization when their particular cases demonstrate an urgent humanitarian need or that their presence will significantly benefit the public." *Texas v. Biden*, 20 F.4th 928, 947 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded*, 597 U.S. 785 (2022).[7] For example, humanitarian parole may be granted noncitizens who have serious medical conditions,  women who are pregnant, minors, noncitizens who will be witnesses in legal proceedings, or to other noncitizens whose continued detention is not in the public interest. *See* 8 C.F.R. § 212.5(b).

Accordingly, a §1182(d)(5)(A) parolee is considered to be lawfully present in the United States.  *See  United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019) (collecting  cases  for  the proposition that parole constitutes lawful status under long-standing understanding of federal law). As a result, noncitizens granted humanitarian parole under § 1182(d)(5)(A): "(1) may be eligible to access certain Federal public benefits (if paroled into the United States for a period of at least

---

[6] In 2009, ICE issued a memo stating that "arriving aliens" who had demonstrated a credible fear of persecution should be considered for humanitarian parole on an individualized basis and *should* be granted parole under 8 U.S.C. § 1182(d)(5)(A) unless additional factors indicating that the noncitizen poses a flight risk or danger to the community are present. *See* USCIS Memorandum, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture, (Dec. 8, 2009) https://perma.cc/WG3Z-7AHQ.

[7] As described in *Texas v. Biden*, 646 F. Supp. 3d 753, 763 (N.D. Tex. 2022) the district court noted that *Biden v. Texas*, 142 S. Ct. 2528, 213 L.Ed.2d 956 (2022) "did not disturb any of the holdings of this Court or the Fifth Circuit on issues of standing or reviewability to challenge a termination of MPP, the limits on parole authority, or the mandatory nature of the detention requirements of Section 1225."

one year), 8 U.S.C. §§ 1611(a), 1641(b)(4); (2) can apply for adjustment of status under 8 U.S.C. § 1255(a); and (3) can seek employment authorization, 8 C.F.R. § 274a.12(c)(11)." *Rodriguez-Acurio*, 2025 WL 3314420, at *11.

However, 8 U.S.C. § 1182(d)(5)(A) specifies that noncitizens who have been paroled are not considered "admitted," and when the purpose of humanitarian parole is served, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled." If the parolee is returned to custody, their case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Parole may be terminated upon written notice or automatically by the "expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)–(2).[8] Moreover, if the parolee is returned to custody, further inspection or hearings shall be conducted under 8 US.C. §§ 1225(b) or 1229a or "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i). If the "exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless ... public interest requires that the alien be continued in custody." *Id.*

### iii.    Detention Pursuant to Section 1226

Section 1226 provides the general process for arresting and detaining noncitizens who are "already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. at 289. The Supreme Court has explained that "[e]ven once inside the United States," noncitizens "who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission" may be detained subject to 8 U.S.C. § 1226. *Id*. at 288. Section

---

[8] When a charging document is served on the parolee, the charging document "will constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i).

1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id*. (quoting § 1226(a)). Under 8 U.S.C. § 1226(a), a noncitizen is generally entitled to a bond hearing at the outset of their detention. *See id*. ("the Attorney General 'may release' an alien detained under § 1226(a) 'on bond' or 'conditional parole'" (quoting 8 U.S.C. § 1226)); *see also id*. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

In contrast, 8 U.S.C. § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," including certain noncitizens who fall into "one of several enumerated categories involving criminal offenses and terrorist activities." *Id*. at 289.

### B.    Analysis

Having set out the relevant statutory framework the Court now turns to whether it has jurisdiction to hear Petitioner's claims. The Court then analyzes Respondents' argument that Petitioner has not exhausted administrative remedies before addressing the substance of Petitioner's claim that he is being unlawfully detained.

### 1.    Jurisdiction

Although Respondents do not dispute the Court has jurisdiction to hear Petitioner's claims, "[the Court] must first consider whether [it has] jurisdiction to decide this case." *Florida v. Thomas*, 532 U.S. 774, 777 (2001); *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 344 (5th Cir. 2021) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Under 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus to any person who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." A district court's

habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas*, 533 U.S. at 687; *see also Demore*, 538 U.S. at 517; *Baez*, 150 F. App'x at 312; *Oyelude*, 125 F. App'x at 546. Under the INA, as amended by the IIRIRA, Congress enacted certain "jurisdiction stripping" provisions which limit federal courts' jurisdiction to review the removal of noncitizens. However, "where a provision precluding review is claimed to bar habeas review, the [Supreme] Court has required a particularly clear statement that such is Congress' intent." *Demore*, 538 U.S. at 517 (2003) (citing *INS v. St. Cyr,* 533 U.S. 289, 308–309 (2001) for the proposition that the title of a provision, "Elimination of Custody Review by Habeas Corpus," along with broad statement of intent to preclude review, was not sufficient to bar review of habeas corpus petitions).

The Court considers jurisdiction stripping provisions: 8 U.S.C. § 1252(e) and 8 U.S.C. § 1252(a)(2).

8 U.S.C. § 1252(e) reads in part:

Judicial review of orders under section 1225(b)(1)

(1) Limitations on relief

Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may—

(A) enter declaratory, injunctive, or other equitable relief in any *action pertaining to an order to exclude* an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection, or

(emphasis added). Here, Petitioner does not request relief in an action pertaining to an order to exclude under 8 U.S.C. § 1225(b)(1), indeed Petitioner does not challenge an order of removal at all, rather Petitioner challenges the lawfulness of his ongoing detention. *See Brumme v. I.N.S.*, 275 F.3d 443, 446 (5th Cir. 2001) (upholding a district court's determination that that 8 U.S.C. 1252(e) stripped the court of jurisdiction to hear a petitioner's claim where "[t]he real issue [Petitioner] asked the district court to address, however, was whether she was admissible or entitled to relief

from removal."); *Barrientos v. Baltazar*, 2024 WL 5455686, at *4 (S.D. Tex. Dec. 18, 2024), *R&R adopted*, 2025 WL 744703 (S.D. Tex. Mar. 7, 2025) ("While Congress has limited habeas review of removal decisions made under § 1225(b)(1), Petitioner is not challenging his expedited removal order, and, thus, his claim is not barred by § 1252."). Petitioner's case is not about whether he is properly subject to expedited removal order (which the Court cannot consider), rather it is about whether he is properly subject to mandatory detention under the expedited removal statute as someone who was previously released from custody on parole. Therefore, 8 U.S.C. § 1252(e) does not strip the Court of jurisdiction to hear Petitioner's claims regarding unlawful detention.

The Court also addresses 8 U.S.C. § 1252(a)(2) which states:

(2) Matters not subject to judicial review

(A) Review relating to section 1225(b)(1)
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—

(i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

(ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,

(iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or

(iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

Because 8 U.S.C. § 1252(a)(2)(A) does not provide an express statement from Congress that the Court is stripped of its jurisdiction to hear Petitioner's habeas petition, the Court does not read 8

U.S.C. § 1252(a)(2)(A) to limit consideration of a noncitizen's challenge to his detention. The Court concludes that 8 U.S.C. § 1252(a)(2)(A) does not bar the Court from considering this limited claim on the grounds set forth in the discussion of the merits below. *See N.A. v. Larose*, 2025 WL 2841989, at *4 (S.D. Cal. Oct. 7, 2025) (citing *Padilla v. U.S. Immigr. and Customs Enf't*, 704 F. Supp. 3d 1163, 1170 (W.D. Wash. 2023); *Co Tupul v. Noem*, 2025 WL 2426787, at *2 n.4 (D. Ariz. Aug. 4, 2025); *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025)); *see also Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 663 (E.D. Mich. 2003) ("if the statute has not been lawfully applied, the question then becomes whether the unlawful application has violated petitioners' constitutional rights." (citation omitted)). Here, Petitioner is not challenging the merits of a removal order, challenging his removability, or anticipatorily seeking relief from removal. Nor is he challenging the decision of DHS to initiate expedited removal proceedings. The Court construes the Petition as challenging only the lawfulness of Petitioner's detention, rather than challenging the "procedures and policies adopted by the Attorney General to implement" expedited removal proceedings. *See* 8 U.S.C. § 1252(a)(2). Accordingly, the Court finds that it has not been stripped of jurisdiction to hear Petitioner's claims regarding his unlawful detention.

### 2.    Exhaustion of Remedies

The Court briefly addresses Respondents argument that Petitioner's claims are barred because Petitioner has not exhausted his administrative remedies by appealing the Immigration Judge's denial of custody re-determination for lack of jurisdiction. (*See* Dkt. 12 at 3.) Respondents' arguments regarding administrative exhaustion mirror those the Court has rejected in similar circumstances. *See Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025); *Chavez v. Bondi*, 2025 WL 3684858, at *4 (S.D. Tex. Dec. 12, 2025).

As in *Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025), the Court found that under relevant immigration law, exhaustion of administrative remedies is statutorily required only on appeals from final orders of removal. *See Hniguira v. Mayorkas*, 2024 WL 1201634, at *6 (S.D. Tex. Mar. 20, 2024). And prudential exhaustion is not necessary where, as here, "the interests of the individual weigh heavily against requiring administrative exhaustion." *See McCarthy v. Madigan*, 503 U.S. 140, 146 (1992); *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). Accordingly, the Court rejects Respondents' arguments.

### 3.    Mr. Suarez-Lugo is Not Detained Under 8 U.S.C. § 1225(b)

The Court now turns to the merits of Petitioner's claim, and the central question at hand: whether Petitioner is lawfully detained under 8 U.S.C. § 1225(b). Respondents assert that Mr. Suarez Lugo was "placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1) on August 13, 2023, before being moved to full removal proceedings." (Dkt. 12 at 2.) Respondents further argue that the Court should find Petitioner subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (*Id.* at 3–6.) Since Petitioner was placed in expedited removal pursuant to 8 U.S.C. § 1225(b)(1) the Court briefly addresses why, after release on parole, 8 U.S.C. § 1225(b)(1) is no longer the applicable detention authority. The Court then analyzes Respondents' arguments that 8 U.S.C. § 1225(b)(2) should govern Petitioner's detention and similarly finds that 8 U.S.C. § 1225(b)(2) cannot govern Petitioner's detention.

### a.    8 U.S.C. § 1225(b)(1)

The Court finds that Petitioner, as someone who was previously paroled from custody and continuously resided in the United States while on parole for over two years, is not subject to

mandatory detention under 8 U.S.C. § 1225(b)(1).[9] Whether 8 U.S.C. § 1225(b)(1) applies to Petitioner is a question of statutory interpretation. Therefore, "our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v United States*, 541 US 176, 183 (2004). "When a statute includes an explicit definition, [courts] must follow that definition, even if it varies from a term's ordinary meaning," *Digital Realty Trust, Inc v. Somers*, 583 U.S. 149, 160 (2018) (citation omitted), but where the text is undefined "[i]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary ... meaning ... at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019).

As discussed above, 8 U.S.C. § 1225(b)(1) applies to noncitizens who (1) are alleged to be inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7) *and* (2) fall into either the Arriving Alien Provision or Designation Provision. It is undisputed that Mr. Suarez Lugo is alleged to be inadmissible under both 8 U.S.C. § 1182(a)(6)(C) and § 1182(a)(7). However, as discussed below, Mr. Suarez Lugo cannot be subject to detention under either the Arriving Alien Provision or Designation Provision. Therefore, he cannot be detained pursuant to 8 U.S.C. § 1225(b)(1).

### i.    Arriving Alien Provision under Section 1225(b)(1)(A)(i)

Because Petitioner never met the definition of an "arriving alien" in the United States, he cannot be detained pursuant to the Arriving Alien Provision. The Arriving Alien Provision imposes expedited removal and mandatory detention on "an alien . . . who is arriving in the United States" and who is inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7). 8 U.S.C. §

---

[9] A number of district courts across the country have recently held that noncitizens, like Petitioner, who were granted parole under 8 U.S.C. § 1182(d)(5)(A) are not subject to mandatory detention under 8 U.S.C. § 1225(b)(1). *See Rodriguez-Acurio*, 2025 WL 3314420, at *14 (collecting cases); *Paula G. v. Bondi*, 2026 WL 146003, at *2 (D. Minn. Jan. 20, 2026).

1225(b)(1)(A)(i). "The statute itself does not define 'arriving' for purposes of the Arriving Aliens Provision." *Coal. for Humane Immigrant Rts. v. Noem*, 2025 WL 2192986, at *5 (D.D.C. Aug. 1, 2025) ("Coalition"); *see also* 8 U.S. Code §§ 1101, 1225. However, a DHS regulation, which was promulgated the year after the statute's passage, clarifies that "arriving alien" refers to noncitizens who enter the United States through a port-of-entry or are interdicted in international or United States waters. *Coalition*, 2025 WL 2192986, at *5 (citing Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10312–13 (Mar. 6, 1997)). The current definition reads:

> Arriving alien means an applicant for admission coming or attempting to come into the United States at *a port-of-entry*, or an alien seeking transit through the United States at a *port-of-entry*, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

8. C.F.R. § 1.2 (emphasis added); *see id.* § 235.3(b)(i) (applying that definition). In line with this definition, the Court interprets "arriving aliens" to mean those who are, indeed, arriving in the United States at a port-of-entry. *See Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025) ("those whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages."); *see also* 8 U.S.C. § 1225(b)(2)(C), (1)(F), and (d)(2) (all referring to the words "arriving" "arrival" or "arrive" to refer to the process that occurs upon physical entry at the border).

Thus, Petitioner cannot be considered an "arriving alien" because he has never attempted to come into the United States at a port-of-entry. Rather, he entered without inspection by crossing the border unlawfully and was later apprehended by DHS as was reflected on his NTA. (*See* Dkt. 1, Attach. 2 at 6) (demonstrating that the box for DHS to indicate that Petitioner was an arriving

alien upon apprehension was left unmarked). Therefore, because Petitioner was never alleged to be an "arriving alien," the Arriving Alien Provision is plainly inapplicable to him.

### ii. Designation Provision under Section 1225(b)(1)(A)(iii)

Given that the Arriving Alien Provision is inapplicable to Petitioner due to his manner of entry into the United States, the Court infers that DHS initially placed Petitioner into expedited removal proceedings pursuant to the Secretary of Homeland Security's authority to designate certain noncitizens apprehended in the interior for expedited removal under the Designation Provision.[10]

However, even if Petitioner was initially properly detained pursuant to the Designation Provision, 8 U.S.C. § 1225(b)(1)(A)(iii), at the time he first entered the United States, Petitioner cannot be redetained by DHS pursuant to this same authority because Petitioner was later paroled from custody. As discussed above, the Designation Provision, in relevant part, authorizes the Secretary of Homeland Security, as the Attorney General's delegate, to designate as eligible for expedited removal any noncitizen "*who has not been admitted or paroled* into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately

---

[10] Respondents do not clarify under which provision—the Arriving Alien Provision or the Designation Provision—Petitioner was initially detained. Instead, Respondents broadly state that "Petitioner was apprehended and taken into immigration custody on or around August 13, 2023, and placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1), at the initial custody determination made by DHS." (Dkt. 12 at 6–7). Although Petitioner appears to dispute the date of entry, (*see* Dkt. 1 at 5), it is undisputed that Petitioner entered without inspection and was never an "arriving alien." (*See* Dkt. 16 at 3; Dkt. 12 at 2; Dkt. 1, Attach. 2 at 6.) Taking as true the allegations in the NTA and considering that Petitioner was initially subject to detention under 8 U.S.C. § 1225(b)(1) in 2023, Petitioner would have been subject to expedited removal under the designation provision since he was never designated as an "arriving alien."

prior to the date of the determination of inadmissibility ..." 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (emphasis added).

The issue here turns on the meaning of the phrase "who has not been ... paroled into the United States" in 8 U.S.C. § 1225(b)(1)(A)(iii)(II). The Supreme Court has indicated that the meaning of the "has not been" grammatical construction may render statutory text ambiguous. *See Hewitt v. United States*, 606 U.S. 419, 427–28 (2025) ("present-perfect tense can refer to either (1) 'an act, state, or condition that is *now* completed' or (2) 'a past action that comes up to and touches the *present*.'" (emphasis in original)). Therefore, the meaning of "who has not been" in 8 U.S.C. § 1225(b)(1)(A)(iii)(II) depends on the way in which the phrase is used in the statute, adjacent statutory language, and background legal principles. *See Rodriguez-Acurio*, 2025 WL 3314420, at *15; *Coalition*, 2025 WL 2192986, at *22 (citing *Hewitt*, 606 U.S. 419 (2025)). Given the ambiguity in the text, the Court agrees with the reasoning presented in *Coalition*, and finds that the adjacent statutory terms, entire statutory scheme, and background legal principles indicate that the Designation Provision cannot apply to noncitizens who have been, at any point in time, paroled into the United States. *Coalition*, 2025 WL 2192986, at *22; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *15 (applying *Coalition*'s interpretation of Section 1225(b)(1)); *Aviles-Mena v. Kaiser*, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (same); *Munoz Materano v. Arteta*, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025) (same); *Salgado Bustos v. Raycraft*, 2025 WL 3022294, at *6 (E.D. Mich. Oct. 29, 2025) (holding the same and recognizing that "[n]umerous courts have rejected Respondents' interpretation of [Section 1225(b)(1)]").

Here, Mr. Suarez Lugo was apprehended by CBP, inspected, and issued a Notice and Order of Expedited Removal in August of 2023. Thereafter, Petitioner was released into the country on parole. Because Mr. Suarez Lugo's parole allowed him to live in United States it is clear that—

based on adjacent statutory terms, the text as understood as a part of the entire statutory scheme, and background legal principles—8 U.S.C. § 1225(b)(1)(A)(iii) can no longer apply to Petitioner. *See Rodriguez-Acurio*, 2025 WL 3314420, at *17 ("Because [petitioner's] parole served to permit [petitioner] to move from the border to the interior of the country, it functionally served to do exactly what its plain text conveys— 'parole [her] *into* the United States' and out of expedited removal." (quoting 8 U.S.C. § 1182(d)(5)(A)).

Additionally, the text of the provision under which Petitioner was paroled, 8 U.S.C. § 1182(d)(5)(A), does not place Petitioner within the Designation Provision either. The text of 8 U.S.C. § 1182(d)(5)(A) states:

> when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

The Supreme Court has emphasized the latter half of 8 U.S.C. § 1182(d)(5)(A), stressing that once a noncitizen is paroled, if the noncitizen is returned to custody, "thereafter *his case shall continue to be dealt with in the same manner as that of any other applicant for admission.*" *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (emphasis in original). Accordingly, Petitioner may be returned to DHS custody, but he must be returned and dealt with as "any other applicant for admission." *See id*. Understood in context, the appropriate detention authority for any other applicant for admission, like Petitioner, who has lived in the United States for several years, is 8 U.S.C. § 1226(a). *See Jennings*, 583 U.S. at 288; *see also Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (quoting *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) and citing *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025)) (finding that § 1226(a) is the applicable detention authority for a petitioner

who lived in the United States for a period of time and was apprehended in the interior).Therefore, the text of 8 U.S.C. § 1182(d)(5)(A) supports the Court's determination that Petitioner cannot now be redetained under the Designation Provision.

Finally, the Court also considers 8 C.F.R. § 212.5 as it relates to noncitizens granted parole under 8 U.S.C. § (d)(5)(A). 8 C.F.R. § 212.5 provides that upon expiration of humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), the noncitizen "shall be restored to the status that he or she had at the time of parole" *and* that "[a]ny further inspection or hearing [following expiration of parole] shall be conducted under section 235 or 240[.]" 8 C.F.R. § 212.5(e)(i). As the district court reasoned in *Coalition*, this regulation

> is easily read as providing not ... for either expedited removal or section 240 removal for noncitizens whose parole is terminated. Instead, it appears to provide for either inspection under section 235 (which can then lead to either expedited or regular removal proceedings) or, if the parolee does not require any 'further inspection,' to section 240 proceedings.

2025 WL 2192986, at *26. Here, Petitioner was previously placed in Section 240 proceedings as a result of an asylum officer's finding that he had demonstrated a credible fear of persecution. Therefore, the Court does not read the regulation as dictating that Petitioner's current detention is mandated by section 235, 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

### b.    8 U.S.C. § 1225(b)(2)

As discussed above, 8 U.S.C. § 1225(b)(2)(A) authorizes mandatory detention throughout section 240 proceedings for noncitizens who are 1) "seeking admission" and 2) determined by an immigration officer not to be "clearly and beyond a doubt entitled to be admitted" to the United States. *See* 8 U.S.C. § 1225(b)(2)(A).

Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) based on a plain language reading of the relevant INA provisions, developments in

agency interpretation of the INA, and prior legal precedent. (Dkt. 12 at 2–6.) Respondents' arguments regarding statutory construction mirror those that this Court addressed previously in *Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025) and that numerous other courts across this district and across the country have considered. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (collecting cases); *see also Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases).

Although the circumstances of Petitioner's case differ slightly from those the Court considered in *Fuentes v. Lyons*, applying the same principles of statutory interpretation to the facts of Petitioner's case yields the same result. "Although [Petitioner] is an applicant for admission, [he] clearly is not presenting [him]self at the border" and "thereby is not 'seeking admission'" *See Rodriguez-Acurio*, 2025 WL 3314420, at *22. Petitioner entered without inspection, was apprehended, and then granted parole from custody. While Petitioner may be pursuing immigration relief to prevent his removal, it is evident he is not seeking admission or lawful entry but rather the opportunity to remain in the Country. *See id*. (citing *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 488 n.7 (S.D.N.Y. 2025)).

Respondents have failed to offer controlling precedent or reasoning that would justify concluding that 8 U.S.C. § 1225(b)(2) applies to Petitioner's current case. Accordingly, the Court holds that because Petitioner is a noncitizen who previously entered the United States without inspection and has been residing in the United States, Petitioner's current detention under 1225(b)(2) is unlawful. This finding is based on the statutes' plain text, congressional intent, canons of statutory interpretation, legislative history, and longstanding agency practices. *See Fuentes v. Lyons*, 5:25-cv-00153, Dkt. No. 15 (S.D. Tex. Oct. 16, 2025); *Rodriguez-Acurio* 2025 WL 3314420, at *23–24.

In accordance with the above analysis the Court holds that, 8 U.S.C. § 1225(b)(1) and (2) does not apply to Petitioner, as a noncitizen who previously entered the United States without inspection, was later apprehended by DHS, and who was granted parole from custody. Therefore, Respondents have not provided an applicable detention authority to govern Petitioner's current detention, and the Court finds that his current detention is unlawful.[11]

### 4. Remedy

Having addressed the central question of whether Mr. Suarez-Lugo is lawfully detained under 8 U.S.C. § 1225, and finding that the answer is no, the Court turns to the appropriate remedy. As discussed in detail in the Court's Order in *Cruz-Reyes v. Bondi*, 5:26-cv-00060, Dkt. No. 20 (S.D. Tex. Feb. 3, 2026), Petitioner's due process rights were violated when he was unlawfully detained under the mandatory detention provision without any process for such a determination. The Court finds that the appropriate remedy in this case is immediate release in accordance with the Court's reasoning as set out in *Cruz-Reyes v. Bondi*, 5:26-cv-00060, Dkt. No. 20 (S.D. Tex. Feb. 3, 2026).

### <u>CONCLUSION</u>

For the reasons explained above, Mr. Suarez-Lugo's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 12), is DENIED.

1. Respondents are ORDERED to RELEASE Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release within 24 hours of the date of this Order.

---

[11] The Court will decline to address Petitioner's APA at this time.

2.      Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release no less than three hours prior to Petitioner's release from custody.

3.      If Petitioner is re-detained, all applicable regulations and procedures must be followed, including that Petitioner be afforded a bond hearing pursuant to 8 U.S.C. § 1226(a).

4.      Within two weeks of the date of this Order, the parties shall FILE advisories with the Court indicating whether the parties oppose entry of a final judgment in this case.

IT IS SO ORDERED.

SIGNED this February 6, 2026.

_____
Diana Saldaña
United States District Judge